## UNITED STATED BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### Honorable Howard R. Tallman

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **JAMES WILLARD DUVALL and** ) | **Case No. 08-20388 HRT** |
| **RENEE LYNN DUVALL,** ) | **Chapter 7** |
| ) | |
| **Debtors.** ) | |
| ) | |
| ) | |
| **STANLEY M. MICHALSKI and** ) | |
| **ELIZABETH C. MICHALSKI,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **Adversary No. 08-1527 HRT** |
| ) | |
| **JAMES WILLARD DUVALL and** ) | |
| **RENEE LYNN DUVALL,** ) | |
| ) | |
| **Defendants.** ) | |

### ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on *Plaintiff's Motion for Summary Judgment* (docket #57) [the "Motion"].

### I.  FACTS

1. In January 2006, the Michalskis owned improved residential real property in Boulder County known as 2071 Riverside Drive, Lyons, Colorado [the "Property"].

2. In mid-May 2006, the DuValls approached Elizabeth Michalski to ask whether they could rent the Property.

3. The Michalskis decided to offer rental terms to the DuValls. The parties concluded an oral agreement. The DuValls agreed to a month-to-month rental at $500 per month. They further agreed to move out in a timely manner should the property sell.

4. The DuValls moved into the property during the third week in May 2006.

5. The Michalskis received an offer to purchase the Property on June 20, 2006, and negotiated terms of a sales contract within several days.  The Michalskis promptly told

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Adversary No. 08-1527 HRT

      the DuValls of both the offer and the contract for sale, and asked the DuValls to vacate within 30 days.

6.     The DuValls refused to vacate the Property and refused to pay July, 2006, rent.

7.     Subsequent to being informed of the pending sale of the Property and being requested to vacate the Property, on July 3, 2006, without the knowledge or consent of the Michalskis, Debtors prepared, signed and recorded two documents with the Boulder County Clerk and Recorder, identified as: 1) "Announcement of Lien of Real Property" and 2) "Claim of Imminent [sic] Domain of Real Property" [collectively the "Spurious Lien Documents"].

8.     In the body of the DuValls' Announcement of Lien of Real Property, the DuValls state that they
> have also filed a Claim of Imminent [sic] Domain in their behalf on [the Michalski's] property & home in order to negate the sale of such until a proper Court of Law can determine if [the Michalski's] have deliberately attempted to fraud [the DuValls].

9.     In the body of the DuValls' Claim of Imminent [sic] Domain of Real Property, they state
> [The DuValls] now petition this court for a Claim Of Imminent [sic] Domain on the Real Property to prohibit your selling this property & home until this case can be heard in its entirety in a proper Court of Law to determine if [the DuValls] have been deliberately frauded by the Michalskis].

10.    At the time that the DuValls filed the Spurious Lien Documents, there was no legal action pending by the DuValls against the Michalskis concerning the Property.

11.    The Michalskis commenced FED proceedings to evict the DuValls from the Property. A possession hearing was held on July 21, 2006. The DuValls were represented by counsel.

12.    The DuValls filed an Answer in the FED action and made a Counterclaim for unpaid labor expenses.

13.    At the July 21, 2006, possession hearing, the Boulder County Court awarded possession of the Property to the Michalskis and set a hearing on damages.

14.    Following a hearing on October 23, 2006, the Boulder County Court awarded the Michalskis damages and attorneys fees against the DuValls in the total amount of $12,751.74.

15. In August, 2006, the Michalskis commenced an action in the Boulder District Court under COLO. R. CIV. P. 105.1 to remove the Spurious Lien Documents from the records of the Boulder County Clerk and Recorder [the "Spurious Lien Action"].

16. The court duly issued an Order To Show Cause in the Spurious Lien Action and the DuValls were provided with proper notice. A hearing was held on August 21, 2006.

17. The following day, on August 22, 2006, the court entered findings and conclusions in the Spurious Lien Action. The court found that:
    a. The DuValls prepared, signed and recorded the Spurious Lien Documents.
    b. They had knowledge of the contract for sale of the Property at the time they recorded the Spurious Lien Documents.
    c. The pending sales contract on the Property was cancelled by the buyers as a direct result of the Spurious Lien Documents.
    d. The Announcement of Lien is a spurious lien and was recorded with actual knowledge and intent to interfere with the pending contract for sale.
    e. The Imminent Domain Claim was a groundless document that was prepared by the DuValls in actual bad faith with the intent to injure the Michalskis economically.

18. Following a hearing on February 6, 2007, the Boulder District Court entered judgment in the Spurious Lien Action against the DuValls for $5,783.96.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Vitkus v. Beatrice Co.,* 11 F.3d 1535, 1538-39 (10th Cir.1993). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. A "genuine" factual dispute requires more than a mere scintilla of evidence. *Id.* at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hicks v. City of Watonga,* 942 F.2d 737, 743 (10th Cir.1991). Once the moving party meets its burden, the burden shifts to the nonmoving parties to demonstrate that genuine issues remain for trial as to those dispositive matters for which they carry the burden of proof. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir .1990); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Adversary No. 08-1527 HRT

887, 891 (10th Cir.1991). The nonmoving parties may not rest on their pleadings but must set forth specific facts. *Applied Genetics,* 912 F.2d at 1241.

The Court "must view the record in a light most favorable to the parties opposing the motion for summary judgment." *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991). Summary judgment may be granted if the nonmoving parties' evidence is merely colorable or is not significantly probative. *Anderson,* 477 U.S. at 250-51. "In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir.1988). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Phillips v. Calhoun,* 956 F.2d 949, 951 n.3 (10th Cir.1992); *accord Annett v. Univ. of Kan.,* 371 F.3d 1233, 1237 (10th Cir. 2004) (noting that "unsupported conclusory allegations ... do not create a genuine issue of fact") (internal citation and quotation marks omitted).

### III.  DISCUSSION

A.  Willful and Malicious Injury under 11 U.S.C. § 523(a)(6)

The Michalskis seek summary judgment on two claims under § 523(a)(6):
1. "First Claim: Slander to Title"
2. "Second Claim: Interference With Contract"

Section 523(a)(6) provides that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).

In the case of *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974 (1998), the Supreme Court discussed the willfulness prong of the test for nondischargeability under § 523(a)(6). *Geiger* set forth the principal that to establish the willfulness element under § 523(a)(6) "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* at 61, 977.  The actor must "intend 'the *consequences* of an act,' not simply 'the act itself.' *Id.* at 61-62, 977 (quoting Restatement (Second) of Torts § 8A, Comment a, p. 15 (1964)).

"Willful injury may be established by direct evidence of specific intent to harm a creditor or the creditor's property.  Willful injury may also be established indirectly by evidence of both the debtor's knowledge of the creditor's . . . rights and the debtor's knowledge that the conduct will cause particularized injury." *Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley)*, 235 B.R. 651, 657 (B.A.P. 10th Cir. 1999).

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Adversary No. 08-1527 HRT

The malice prong of 11 U.S.C. § 523(a)(6) is satisfied upon a showing the injury was inflicted *without just cause or excuse. See, e.g., Kuhn v. Driver (In re Driver)*, 305 B.R. 266, 268 (Bankr. N.D. Tex. 2003); *Johnson v. Wood (In re Wood)*, 303 B.R. 370, 373 (Bankr. C.D. Ill. 2003); *Beckett v. Bundick (In re Bundick)*, 303 B.R. 90, 109 (Bankr. E.D. Va. 2003); *Neshewat v. Salem (In re Salem)*, 290 B.R. 479, 485 (S.D. N.Y. 2003); *McAlister v. Slosberg*, 225 B.R. 9, 21 (Bankr. D. Me. 1998).

*1. Collateral Estoppel*

This Court need not re-litigate issues that have been previously heard and decided by other Courts. Even though the prior court did not decide the precise issue before this Court – the dischargeability of the debts at issue – the "doctrine of collateral estoppel may be invoked to bar relitigation of the factual issues underlying the determination of dischargeability." *Wallace v. Klemens (In re Wallace)*, 840 F.2d 762, 764 (10th Cir. 1988). "A federal court reviewing the preclusive effect of a state court judgment under the collateral estoppel doctrine is guided by the mandates of 28 U.S.C. § 1738, the Full Faith and Credit Statute." *State Farm Fire and Cas. Co. v. Edie (In re Edie)*, 314 B.R. 6, 12 (Bankr. D. Utah. 2004). The Full Faith and Credit Statute mandates that federal courts apply the preclusion law "of the state in which the judgment was rendered." *Id.*

Therefore, Colorado collateral estoppel doctrine will apply in this adversary proceeding. In Colorado, "collateral estoppel bars relitigation of an issue if the following factors are satisfied: (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding." *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-5 (Colo. 1999). "The burden of establishing these elements rests with the party seeking preclusion." *Id.*

According to the Colorado Supreme Court, an issue is actually litigated when the parties have raised the issue in the prior action. *Id.* "A legally raised issue is one that a party, by appropriate pleading, asserts through a claim or cause of action against the other." *Id.* The issue in question must have been submitted for determination and actually ruled on by an "adjudicatory body." *Id.* However, collateral estoppel does not bar litigation of matters that could have been raised in the prior proceeding but were not. *Id* at 86. Additionally, the issue in question must not have only been actually litigated, but also necessary to the previous action, which is to say that the adjudication of the issue was essential to the judgment in the prior court.

In order to determine whether a party had a full and fair opportunity to litigate the issue in the prior proceeding, the following factors are considered: "whether the remedies and

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Adversary No. 08-1527 HRT

procedures of the first proceeding are substantially different from the proceeding in which collateral estoppel is asserted, whether the party against whom collateral estoppel is asserted had sufficient incentive to litigate vigorously, and to the extent to which the issues are identical." *Grynberg v. Arkansas Oklahoma Gas Corp.*, 116 P.2d 1260, 1265 (Colo. Ct. App. 2005). The first element "requires an inquiry into whether the initial proceeding was so inadequate or so narrow in focus as to deprive an individual of his or her due process rights should application of the doctrine of collateral estoppel be used to bar relitigation of that issue." *Id*. This means that an individual must have been able to raise the issues that are to be precluded, not that they were required to. *Id*. Additionally, it is important to consider that a party "does not have the same incentive to litigate in the first proceeding if its exposure to liability is substantially less than in the second proceeding." *Id*.

Through the operation of these elements, a Colorado court's final decision on an issue actually litigated and decided precludes relitigation of that issue in subsequent state or federal actions. *Bebo Constr. Co.*, 990 P.2d at 84.

The Michalskis brought the Spurious Lien Action against the DuValls in the Boulder County District Court under Colorado's spurious lien statute. COLO. REV. STAT. § 38-35-201 et seq.; COLO. R. CIV. P. 105.1. The definitions of the terms "spurious document" and "spurious lien" appear in § 38-35-201 as follows:

> "Spurious document" means any document that is forged or groundless, contains a material misstatement or false claim, or is otherwise patently invalid.

COLO. REV. STAT. § 38-35-201(3).

> "Spurious lien" means a purported lien or claim of lien that:
> (a) Is not provided for by a specific Colorado or federal statute or by a specific ordinance or charter of a home rule municipality;
> (b) Is not created, suffered, assumed, or agreed to by the owner of the property it purports to encumber; or
> (c) Is not imposed by order, judgment, or decree of a state court or a federal court.

COLO. REV. STAT. § 38-35-201(4).

> If . . . the court determines that the lien or document is a spurious lien or spurious document, the court shall make findings of fact and enter an order and decree declaring the spurious lien or spurious document and any related notice of lis pendens invalid, releasing the recorded or filed spurious lien or spurious document, and entering a monetary judgment in the amount of the petitioner's

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Adversary No. 08-1527 HRT

   costs, including reasonable attorney fees, against any respondent and in favor of
   the petitioner. . . .

COLO. REV. STAT. § 38-35-204(2).

   *2. The Boulder County Spurious Lien Action*

   After a hearing in the Spurious Lien Action, the Boulder County District Court found that:

   a.  The DuValls prepared, signed and recorded the Spurious Lien Documents.
   b.  They had knowledge of the contract for sale of the Property at the time they recorded the Spurious Lien Documents.
   c.  The pending sales contract on the Property was cancelled by the buyers as a direct result of the Spurious Lien Documents.
   d.  The Announcement of Lien is a spurious lien and was recorded with actual knowledge and intent to interfere with the pending contract for sale.
   e.  The Imminent [sic] Domain Claim was a groundless document that was prepared by the DuValls in actual bad faith with the intent to injure the Michalskis economically.

   As discussed above, the elements of a cause of action under § 523(a)(6) that the Michalskis wish to establish by collateral estoppel are: 1) that the DuValls intended to injure them; and 2) that the DuValls acted with legal malice. Colorado's spurious lien statute gives a victim of such a spurious filing a method to clear the cloud on their property title and provides for an award of costs to the successful litigant. It does no more than that. Notably, it requires no inquiry into the intent of the filer as an element of relief. There is no requirement in the spurious lien statute that the court find an intent to harm or legal malice as a requirement for providing relief.

   Before the Court may employ the doctrine of collateral estoppel to give preclusive effect to the proceedings in the Boulder County District Court, it must find that "[t]he issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding." *Bebo Constr. Co.*, 990 P.2d at 84-85. "An issue is actually litigated and necessarily adjudicated when a party properly raised the issue and *a determination on that issue was necessary to the judgment*. In re Tonko*, 154 P.3d 397, 405 (Colo. 2007) (citing *In re Water Rights of Elk Dance Colo., LLC*, 139 P.3d 660, 667 (Colo. 2006)) (emphasis added).

   The Judgment of the Boulder County District Court contained numerous findings that were wholly extraneous to the issue that was before that court and were, therefore, not necessary to the judgment reached by that court. To accord relief to the Michalskis, that court merely had

Page 7 of 13

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Adversary No. 08-1527 HRT

to determine that the Spurious Lien Documents did meet the definition of either a spurious lien or spurious document under the statute. A document may satisfy either definition without the court finding an intent to do harm or legal malice. Because those elements must be satisfied for this Court to find willful and malicious injury under § 523(a)(6) and because the state court's findings on intent and malice were not necessary to its judgment, that court's judgment cannot be given preclusive effect on the § 523(a)(6) claims in this Court.

### 3. Summary Judgment on § 523(a)(6) Claims Without Collateral Estoppel

In the body of the DuValls' Announcement of Lien of Real Property, the DuValls state that they

> have also filed a Claim of Imminent [sic] Domain in their behalf on [the Michalski's] property & home in order to negate the sale of such until a proper Court of Law can determine if [the Michalski's] have deliberately attempted to fraud [the DuValls].

In the body of the DuValls' Claim of Imminent [sic] Domain of Real Property, they state

> [The DuValls] now petition this court for a Claim Of Imminent [sic] Domain on the Real Property to prohibit your selling this property & home until this case can be heard in its entirety in a proper Court of Law to determine if [the DuValls] have been deliberately frauded by the Michalskis].

From the above statements contained in the Spurious Lien Documents, the Court concludes that they were filed in the Boulder County real estate records by the DuValls with the express intention and belief that they would serve to block the Michalskis' sale of the Property. The DuValls were fully aware the Michalskis had been trying to sell the Property for approximately two years. At bare minimum, they knew or should have known that an economic harm to the Michalskis would inevitably follow if they acted to prevent the sale of the Property. It is abundantly clear from their own words, in the documents they prepared and filed, that they acted with the intention of preventing the sale of the Property. The Court concludes that the DuValls intended to cause harm to the Michalskis.

The second element of the Michalski's § 523(a)(6) claim, that of legal malice, is satisfied if the DuVall's action was taken without just cause or excuse. The common usage of the term "malice" might imply that the DuValls acted with ill will or spite toward the Michalskis. Indeed, that inference may well be drawn from the evidence, but it is not necessary for the Court to find that the DuValls acted with a specific ill will directed toward the Michalskis. The Court need only find that their actions were unjustified – without just cause or excuse – in order to satisfy the requirement of legal malice. *Tinker v. Colwell*, 193 U.S. 473, 485-86 (1904).

The Court finds that the Spurious Lien Documents were without any legal basis. That much is established by the judgment rendered in the Boulder County District Court in the Spurious Lien Action. A finding that the documents were groundless was an element that was actually litigated and necessary for the court's decision in that case and the DuValls are estopped from claiming otherwise. Moreover, regardless of the findings on that point by the state court, the evidence before this Court established the lack of legal basis for the Spurious Lien Documents.

Both documents refer to the DuValls seeking an adjudication of rights with respect to the Property, but there was no such legal action on file when the Spurious Lien Documents were filed.[1] They were nothing more than naked documents referring to non-existent legal actions and filed with no conceivable claim of a right to do so. The Court finds no just cause or excuse for the DuValls to file documents in the real estate records that, by their own words, they knew and expected would prevent the sale of the Property from going forward. The DuValls are liable under 11 U.S.C. § 523(a)(6) for damages arising from their willful and malicious injury to the Michalskis.[2]

It is stated in the Michalski's pleadings and in the judgment of the Boulder County District Court that the Spurious Lien Documents filed by the DuValls resulted in the failure the pending sale of the Michalski's Property. But that is not a fact attested to by affidavit or other evidence.[3] For that reason, although the Michalski's have conclusively established the Duvalls' willful and malicious intent, under § 523(a)(6), to cause them harm, the Court will require evidence at trial that the intended harm did occur and of the damages flowing from that harm.

---

[1] The substance of the Spurious Lien Documents bears some distant resemblance to a notice of lis pendents that a party might file in the real estate records to warn a potential purchaser that property is the subject of active litigation affecting its title. But no such litigation existed when the DuValls filed the documents that could conceivably serve as a basis to file documents affecting title to the Property.

[2] The Michalski's complaint purports to state two separate state law causes of action under § 523(a)(6) – slander to title and interference with contract. The Court has not treated those state law claims separately. Establishment of neither state law claim separately is a sufficient predicate for the Court's finding of willful and malicious injury under § 523(a)(6).

[3] The fact of the failure of the sale transaction may not be established by the Boulder County District Court judgment because that was not a finding that was necessary to the result reached in that case.

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Adversary No. 08-1527 HRT

B. Fraud under 11 U.S.C. § 523(a)(2)

The Michalskis seek summary judgment under 11 U.S.C. § 523(a)(2)(A) on their "Fourth Claim: Use And Rental Of Property." That section of the Bankruptcy Code provides that

> A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

11 U.S.C. § 523(a)(2)(A). The elements that the Michalskis need to establish to prove their cause of action under § 523(a)(2)(A) are:

> "(1) the debtor made a false representation; (2) the debtor made the representation with the intent to deceive the creditor; (3) the creditor relied on that representation; (4) the creditor's reliance was [justifiable];[4] (5) the debtor's representation caused the creditor to sustain a loss." *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

The Michalskis rely on statements appearing on a "Renter Data" sheet. Mrs. Michalski's affidavit states that the data sheet was provided to them by the DuValls. Mr. DuVall testified at his deposition on April 7, 2009, that he and Mrs. Duvall prepared the data sheet after meeting with the Michalskis and delivered it to them at the time they delivered a proposed lease agreement they had prepared and signed. However, at his deposition on April 27, 2009, he denied that either he or Mrs. DuVall had prepared the data sheet.

The Court finds that it is an undisputed fact that the DuValls prepared the Renter Data sheet and provided that information to the Michalskis. The Court cannot escape the conclusion that Mr. DuVall testified falsely during his second deposition session. After first admitting –

---

[4] The *Fowler Bros.* court used the term "reasonable" reliance but, in the case of *Field v. Mans*, the Supreme Court held that § 523(a)(2)(A) requires justifiable, and not reasonable, reliance. 516 U.S. 59, 74 (1995). The Court must apply that standard rather than the reasonable reliance standard articulated in *Fowler Bros.* In order for the Michalskis to have justifiable reliance on a representation under 11 U.S.C. § 523(a)(2)(A), they need only perform a cursory inspection of the representation to the extent that it should be very obvious that the representation is fraudulent. *Field v. Mans*, 516 U.S. at 71. The objective reasonable person standard does not apply; it is merely what a cursory examination of the representation would uncover. Id at 72, 116 S.Ct. 437.

Page 10 of 13

consistent with Mrs. Michalski's affidavit – that he and Mrs. DuVall had prepared the data sheet and given it to the Michalskis, his denial of the same facts at his second deposition session is too little too late to create a genuine dispute as to an issue of material fact. Mr. DuVall's false testimony in his second deposition session simply cannot overcome his admission in the first deposition session with respect to the very same topic.

The DuValls misrepresented their prior residence history in the Renter Date sheet. They stated that the Bein property was their previous residence. That was not truthful. They did not disclose that they had been tenants at two properties after renting the Bein property. They did not disclose that they were looking for a new place to rent because they were being evicted from a property they were renting from Kathryn Lane.

The DuValls did not disclose to the Michalskis they had been evicted from the Bein property. They stated on the Renter Data sheet that the owner was deceased. True as far as it goes, but the statement implies that the owner's death was the reason for the termination of their tenancy. Of course, it was an eviction that terminated their tenancy, not the owner's death.

The Court is persuaded that the omissions and misleading statements contained on the Renter Data sheet were done with the intention of misleading the Michalskis so that the Michalskis would allow them to rent the Property. Where intent to defraud is at issue, the Court rarely if ever has direct evidence before it of such fraudulent intent. It must, therefore, assess the totality of the circumstances to determine a defendant's intent. In this case, the evidence is clear that the DuValls have a history of disputes with landlords. That history includes not only evictions but lawsuits against landlords for wrongful eviction. The Court's conclusion is that the DuValls rightly believed that the Michalskis would have qualms about entering into a lease agreement with a couple who have a history of legal disputes with landlords. Moreover, it was far easier for the DuValls to hide information that would lead the Michalskis to discover those disputes than to persuade the Michalskis to enter into a landlord / tenant relationship with them despite that history.

The Michalskis relied on the DuValls' misrepresentations by agreeing to rent the Property to them and that reliance was justifiable. The information contained in the Renter Data sheet contains no "red flags" that would alert the Michalskis to the likelihood that it contained false information. Without such red flags, the Michalskis were under no duty to look behind the information that the DuValls provided to them and verify that it was complete and truthful. *Field v. Mans*, 516 U.S. 59, 71 (1995).

Finally, the record before the Court adequately establishes that the Michalskis suffered damages as a result of the DuValls' misrepresentation. The evidence is that the DuValls began their tenancy by paying the rent due to the Michalskis. But, shortly thereafter a dispute arose and the DuValls stopped paying rent. That dispute and the DuValls' nonpayment of rent is consistent with the DuValls' history of landlord / tenant disputes and nonpayment of rent – the

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Adversary No. 08-1527 HRT

very history the DuValls failed to disclose to the Michalskis in the Renter Data sheet. Ultimately, the Michalskis instituted legal action to evict the DuValls. At trial, it will be the Michalski's burden to prove up and quantify the damages they suffered as a result of the DuValls' fraud.

## IV.  CONCLUSION

The Court finds that the DuValls are liable to the Michalskis for any damages they suffered on account of the DuValls' filing of the Spurious Lien Documents in the Boulder County real estate records and that such damages are nondischargeable under 11 U.S.C. § 523(a)(6). However, the damages awarded in state court at the conclusion of the Spurious Lien Action are not necessarily the damages suffered by the Michalskis under § 523(a)(6). As noted above, the Court could not give that judgment preclusive effect under the collateral estoppel doctrine because the elements that establish a spurious lien under Colorado's spurious lien statute differ substantially from the elements necessary to establish willful and malicious injury under § 523(a)(6). Therefore, at trial, the Michalskis must establish the harm they suffered as a result of the filing of those documents and must establish the resulting monetary damages.

The Court further finds that the Michalskis were defrauded by the DuValls' misrepresentations appearing in the Renter Data sheet and that damages suffered by the Michalskis are nondischargeable under 11 U.S.C. § 523(a)(2). However, the record before the Court does not allow the Court to calculate damages suffered by the Michalskis due to the DuValls' fraud. At trial, the Court will require evidence as to the Michalski's damages under § 523(a)(2). Therefore, it is

**ORDERED** that *Plaintiff's Motion for Summary Judgment* (docket #57) is GRANTED IN PART and DENIED IN PART.

a. The Court GRANTS *Plaintiff's Motion for Summary Judgment* to the extent that the Court finds that the Michalskis have proven that the DuValls acted willfully and maliciously by filing the Spurious Lien Documents in the Boulder County real estate records and that the resulting damages suffered by the Michalskis are a nondischargeable debt under 11 U.S.C. § 523(a)(6).

b. The Court GRANTS *Plaintiff's Motion for Summary Judgment* to the extent that the Court finds that the Michalskis entered into a rental agreement with the DuValls as a direct result of the DuValls' fraud and that the damages resulting from such fraud are a nondischargeable debt under 11 U.S.C. § 523(a)(2).

c. The Court DENIES *Plaintiff's Motion for Summary Judgment* to the extent that the record before the Court does not allow the Court to determine damages under

ORDER ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT
Adversary No. 08-1527 HRT

either 11 U.S.C. § 523(a)(2) or 11 U.S.C. § 523(a)(6) and the amount of nondischargeable damages remains an issue to be established at trial.

Dated this  9th  day of October, 2009.

BY THE COURT:

_____
Howard R. Tallman, Chief Judge
United States Bankruptcy Court