# UNITED STATED BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
## Honorable Howard R. Tallman

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **JAMES WILLARD DUVALL and** ) | **Case No. 08-20388 HRT** |
| **RENEE LYNN DUVALL,** ) | **Chapter 7** |
| ) | |
| **Debtors.** ) | |
| ) | |
| ) | **Adversary No. 08-1527 HRT** |
| **STANLEY M. MICHALSKI and** ) | |
| **ELIZABETH C. MICHALSKI** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **RENEE TERRY-DUVALL, a/k/a** ) | |
| **RENEE L. TERRY, personal** ) | |
| **representative for the estate of** ) | |
| **JAMES WILLARD DUVALL, and** ) | |
| **RENEE LYNN DUVALL** ) | |
| ) | |
| **Defendants.** ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING DAMAGES

THIS MATTER came before the Court at a trial held June 6, 2011, on claims brought by Stanley and Elizabeth Michalski (the "Michalskis") against Defendants Renee Terry (a/k/a Renee Terry-DuVall and Renee Lynn DuVall) and the estate of her deceased husband, James Willard Duvall (the "DuValls"). The Michalskis were represented by Richard Marsh; Ms. Terry represented the DuValls *pro se*. Based on the evidence and argument presented, the Court makes the following findings of fact and conclusions of law.

### I.     BACKGROUND

The background on this case is substantially set forth in the Court's Order on Plaintiff's Motion for Summary Judgment ("Summary Judgment Order"), which was entered October 9, 2010 (docket #79). The findings of fact and conclusions of law set forth therein are incorporated herein by reference. In short, in the Summary Judgment Order, the Court concluded that by filing the Spurious Lien Documents on the Michalskis' property, located at 2071 Riverside Drive, Lyons, Colorado ("the Property") to encumber the Property for alleged, but unproven, damages, the DuValls had willful and malicious intent within the meaning of 11 U.S.C. § 523(a)(6) to cause them harm. However, the Court further determined that it would need to hear

evidence at trial to determine whether the intended harm did, in fact, occur, and to determine the amount of damages, if any, resulting therefrom. (Summ. J. Ord. at 9.)

The Court also concluded that the DuValls made various misrepresentations and omissions in the Renter Data sheet that they provided to the Michalskis, with the intention of misleading the Michalskis into allowing them to rent the Property. (Summ. J. Ord. at 10-11.) The Court further found that the Michalskis relied on the DuValls' misrepresentations by agreeing to rent the Property to them, and that the Michalskis' reliance was reasonable. The Court concluded, however, that the Michalskis needed to prove the amount of damages resulting from their reliance on the DuValls' misrepresentations.

## II. FINDINGS OF FACT

### A. Damages Resulting from Loss of Sale to the Selfs

Mr. Michalski was a credible witness. He testified that the Michalskis entered in a Contract to Buy and Sell Real Estate with John and Sharla Self on June 20, 2006, in which the Michalskis agreed to sell the Property to the Selfs for $209,500. (Ex. 4.) The Michalskis and Selfs agreed to close on the sale of the Property on July 20, 2006. (Exs. 4-6.)

Mr. Michalski testified that shortly after signing the Contract with the Selfs, he notified the DuValls that the Property was going to be sold, and asked them to vacate the premises. Mr. Michalski stated that, though Mr. DuVall seemed to agree that he and his family would vacate, it was clear that he was not happy about it. According to Mr. Michalski, Mr. DuVall stated that he believed that he had a lease with the Michalskis, and that under that lease, he should be able to stay longer. He wanted to have a meeting on July 3, 2006, to discuss the matter.

Mr. Michalski testified that he agreed to meet with the DuValls as requested on July 3, 2006, at which time Mr. DuVall handed him a note saying that Mr. Michalski owed them money for work the DuValls had done on the Property. Mr. DuVall also said that he wanted to buy the Property, and that he had a copy of a cashier's check. Mr. Michalski said that the DuValls had never before suggested that they wanted to buy the Property, though the "For Sale" sign had been up throughout their tenancy, and that he never actually saw the purported cashier's check. Mr. Michalski also stated that he refused to pay the DuValls for any work they had purported to do because he had not authorized them to perform any services. He stated that he advised Mr. DuVall that they still owed the Michalskis for rent, gas, and trash pickup. Mr. DuVall then advised Mr. Michalski that they would not vacate the Property. In sum, Mr. Michalski testified, the meeting "did not go very well."

After his discussion with Mr. DuVall, Mr. Michalski called his attorney, authorizing him to commence an eviction action. After the action was filed, the DuValls retained counsel and filed counterclaims, asserting that the Michalskis owed them money for labor and seeking return of their $500 rental deposit. It was during the course of this action that the Michalskis learned that the DuValls had filed their Spurious Liens with the Boulder County Clerk and Recorder. It

was because of the Spurious Liens filed by the DuValls, which clouded the title to the Property, that the sale to the Selfs never closed. As a result of this, Mr. Michalski testified, the Michalskis were forced to put the Property back on the market at a reduced price.

According to Mr. Michalski, the Michalskis subsequently entered into another Contract to Buy and Sell Real Estate with Richard and Ruth Mangus in which the Michalskis agreed to sell the Property for $149,500. (Ex. 9.) The original Contract with the Manguses called for a closing date of September 28, 2006 (Ex. 9); however, the Michalskis were not able to close on the sale until February 16, 2007 (*see* Ex. 10), because they had to file an action under Rule 105.1 of the Colorado Rules of Civil Procedure in order to invalidate the Spurious Liens.

Mr. Michalski's testimony, and the exhibits introduced through his testimony, are convincing evidence that the DuValls' recording of the Spurious Liens caused them to lose the sale of the Property to the Selfs. That evidence also establishes that, as a result of losing the sale and of having to market the house while title remained clouded, the Michalskis lost the ability to close on the Property for $209,500, and required them to sell it at the reduced price of $149,500. The Michalskis were damaged in the amount of $60,000 – the difference between the amount at which they would have sold the Property absent the DuValls' bad conduct, and the amount at which they were eventually able to sell the Property, after clearing the title.

In addition to the principal amount of $60,000, the Michalskis have asked the Court to award them 8% interest per annum[1] on that amount for the period between July 20, 2006, the contractual closing date on the Contract with the Selfs, through the actual sale date of February 16, 2007 (211 days).[2] The Court finds that the Michalskis are entitled to interest on that amount – or $2,774 – as a component of damages.[3] Both the $60,000 and the $2,774 are excepted from discharge under 11 U.S.C. § 523(a)(6).

---

[1] The Michalskis do not state the basis for this claim, though at trial Mr. Michalski stated that he understood it was "the customary" amount. The Court presumes that the Michalskis are seeking an award of prejudgment interest pursuant to COLO. REV. STAT. § 5-12-102, which provides for interest at the rate of eight percent per annum compounded annually.

[2] Though not in their Complaint, the Michalskis requested interest in this amount in the Pretrial Order. They also argued at trial, without objection, that they were entitled to interest in this amount. Under FED. R. CIV. P. 54, "Every other final judgment [other than default judgments] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Thus, the Court may properly award the requested damages.

[3] At the hearing, Mr. Michalski reiterated that the Michalskis were seeking 8% interest on the $60,000 for the 211 days between the cancellation of the July 20, 2006 expected sale an the actual selling date. He stated that he had calculated this amount to be $9,689.12. Mr. Michalski did not go through his method of calculation with the Court; and it is unclear how he reached this figure. Under the Court's calculation, the amount of interest due on $60,000 at 8% over the requested period of 211 days is $2,774.

### B. Damages from Theft of Personal Property

According to Mr. Michalski, a hearing on the eviction has held on July 21, 2006, after which the state court ordered that possession of the Property be restored to the Michalskis. Mrs. Michalski testified that, before the DuValls rented the house, the house was in "tip top" condition, and was fully furnished and outfitted with dishes, silverware, sheets, blankets, and other housewares. She stated that, after the eviction hearing, the DuValls agreed to vacate the Property of their own accord. The Michalskis agreed, but asked that they be given access to the Property before the DuValls left so that they could verify the state of the house, which was to be sold fully furnished. At that time, she took photos of some of the interior areas in the house, some of which appear in Exhibit 14.

According to Mrs. Michalski, within 24-36 hours after the DuValls vacated the house following the order of eviction, she went to the Property and discovered that a number of items of personal property belonging to the Michalskis were missing, including but not limited to videotapes, blankets, silverware, books, dishes, and furniture. In a letter to the Boulder County Sheriff's Office dated October 6, 2006, the Michalskis provided a detailed list of the items that were missing, along with photos of the personal property. (Ex. 14.)

Mrs. Michalski testified credibly about the items that were missing from the house upon the DuValls' vacating. She also testified credibly that the value of the missing items was approximately $1,070.[4] Ms. Terry questioned Mrs. Michalski about the missing items, and entered as exhibits pictures of some of the items Mrs. Michalski identified as missing. Ms. Terry also testified that she took the pictures after she and Mr. DuVall had loaded their truck, asserting that the items were there when they left. Ms. Terry suggested in both her questions and argument that the personal items identified by Mrs. Michalski must have gone missing sometime between the time that the DuValls vacated the Property and the time that Mrs. Michalski arrived there. The Court finds this suggestion to be implausible and highly unlikely. Alternatively, Ms. Terry suggested that the items might have been taken by prospective buyers who were viewing the Property prior to sale. Again, the Court finds Ms. Terry's suggestion to be incredible. The timing of the disappearance of the items, and the testimony that the items were present in the house when Mrs. Michalski inspected it prior to the DuValls' vacating it, is convincing evidence that the DuValls – not prospective buyers who would have toured the house well before the eviction – took them. The evidence is sufficient to find that the DuValls willfully and maliciously converted to their own use and possession the personal property belonging to the Michalskis, with the intention of permanently depriving the Michalskis of it. The Court further finds that Mrs. Michalski's estimated value of $1,070 for such personal property is an appropriate measure of the damages the Michalskis suffered thereby. These damages are nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

---

[4] The DuValls offered no evidence to refute the claim of value. Ms. Michalski testified that her estimation as to value was based upon donation limits for the Internal Revenue Service and her review of Ebay and Craigslist. She also provided a receipt to substantiate the value of the garage door opener that was taken, as it was purchased shortly after the DuValls started renting the Property. (Ex. 14.)

### C. Damages from Use of Rental Property

The Court previously found that the Michalskis were damaged as a result of the DuValls' misrepresentation, which led to their having use of the Property. (Summ. J. Ord. at 10-12.) The evidence at trial showed that during the course of renting the Property, the DuValls were responsible for a number of bills that they failed to pay. The Michalskis subsequently paid the bills as follows: $747 for propane (Ex. 1); $124.60 for waste removal (Ex. 2); and $29.99 for electrical service (Ex. 3). In addition to these bills, the DuValls also failed to pay the $500 rent due for their last month of tenancy; however, the Michalskis retained the DuValls' $500 rental deposit, which offsets nonpayment of rent. Accordingly, the Michalskis' damages in this category total $901.59. As stated in the Summary Judgment Order, this amount is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### D. Attorneys Fees

In addition to claiming the above categories of damages, the Michalskis assert a claim for attorneys' fees and costs arising from the eviction and Rule 105.1 actions.[5] To this end, they called John Sullivan to testify as an expert regarding the reasonableness of the fees incurred in those actions. However, Mr. Sullivan's testimony indicates that the amounts of attorneys' fees and costs in the state court actions were fixed and reduced to judgments as part of the state courts' proceedings. Accordingly, under the doctrine of collateral estoppel, neither party may relitigate the issue of the amounts of attorneys' fees and costs, and this Court is powerless to alter the amount of those debts. *Fox v. Maulding*, 112 F.3d 453, 456 (10th Cir. 1997) ("Federal courts must give to state court judgments 'the same full faith and credit . . . as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.'") (citing 28 U.S.C. § 1738); *Stone v. Dept. of Aviation,* 453 F.3d 1271, 1279 (10th Cir. 2006) ("When a valid and final judgment rendered in an action extinguishes the plaintiff's claim, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions out of which the action arose.")(quoting RESTATEMENT (SECOND) OF JUDGMENTS §24(1)). The question thus becomes whether the Michalskis has demonstrated that award of attorneys' fees was made against the DuValls in the state court actions.

During his testimony, Mr. Sullivan discussed his review of a minute order entered in the eviction action and a judgment in the Rule 105.1 action, in which the trial courts awarded attorneys fees and costs. Mr. Sullivan also testified as to two errors that he found in his review of the billing statements that the Michalskis' counsel submitted in support of the claim. First, in billing statement for the eviction action, there was an error that resulted in an overcharge of $224. (Ex. 7.) Then, in the statement for the Rule 105.1 action, there was another error that resulted in an overcharge of $720. (Ex. 8.) In argument, the Michalskis stated that the debts for

---

[5] This is proper, as under *Cohen v. De la Cruz*, 523 U.S. 213 (1998), a debt for money obtained by fraud includes any liability arising from the debtor's fraudulent conduct, including attorney's fees and costs as provided by state law.

5

attorneys's fees and costs should be reduced accordingly, from $6,978.83 to $6,774.83 in the eviction case, and from $5,783.96 to $5,063.96 in the Rule 105.1 action.

The state court judgment and minute order were not entered into the trial record, but the Michalskis' attorney noted that they were attached to the Michalskis' Motion for Summary Judgment.[6] Questioning of Mr. Sullivan, which was founded in part on awards set forth in these documents, continued without objection from Ms. Terry. Accordingly, the evidence is uncontroverted as to the amount of attorneys' fees awarded in the state court actions. The attorneys' fees and costs awarded in the eviction action are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as debts arising from the DuValls' fraudulent misrepresentations to the Michalskis, and the attorneys fees and costs awarded in the Rule 105.1 action are nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as debts arising from the willful and malicious injury inflicted by DuValls upon the Michalskis by virtue of their recording of the Spurious Liens.

## III.  CONCLUSION

For the reasons stated above, the Court concludes that Stanley and Elizabeth Michalski are entitled to a judgment of $60,000, plus interest in the amount of $2,774, against Renee Terry-DuVall, a/k/a Renee L. Terry, personal representative for the estate of James Willard DuVall, and against Renee Lynn DuVall, jointly and severally, which amounts are nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as a debt for willful and malicious injury to the Michalskis.

The Court further concludes that Stanley and Elizabeth Michalski are entitled to a judgment of $1,070, against Renee Terry-DuVall, a/k/a Renee L. Terry, personal representative for the estate of James Willard DuVall, and against Renee Lynn DuVall, jointly and severally, which amounts are nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as a debt for willful and malicious injury to the Michalskis.

The Court further concludes that Stanley and Elizabeth Michalski are entitled to a judgment for attorneys' fees and costs in the amount of $6,774.83 against Renee Terry-DuVall, a/k/a Renee L. Terry, personal representative for the estate of James Willard DuVall, and against Renee Lynn DuVall, jointly and severally, which amount is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as a debt for money obtained by fraud.

The Court further concludes that Stanley and Elizabeth Michalski are entitled to a judgment for attorneys' fees and costs in the amount of $5,063.96 against Renee Terry-DuVall, a/k/a Renee L. Terry, personal representative for the estate of James Willard DuVall, and against Renee Lynn DuVall, jointly and severally, which amount is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as a debt for willful and malicious injury to the Michalskis.

---

[6] The Minute Order and Judgment are attached to the Motion for Summary Judgment (docket #57) as Appendices 27 and 33, respectively.

Finally, the Court also concludes that Stanley and Elizabeth Michalski are also entitled to damages in the amount of $901.59 against Renee Terry-DuVall, a/k/a Renee L. Terry, personal representative for the estate of James Willard DuVall, and against Renee Lynn DuVall, jointly and severally, which amounts are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as a debt for money obtained by fraud.

Dated this 12th day of August, 2011.

BY THE COURT:

_/s/ Howard Tallman_

Howard R. Tallman, Chief Judge
United States Bankruptcy Court